UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM A. SORRELLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV00378 AGF |
| | ) | |
| ADT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This personal injury matter is before the Court on Plaintiff's motions to exclude opinions and testimony of Defendant's experts Timothy Lalk and Sharron Hughes. For the reasons set forth below, these motions shall be granted.

**BACKGROUND**

This case arises out of a traffic accident on December 12, 2013, in which one of Defendant's employees is alleged to have rear-ended Plaintiff's vehicle, causing Plaintiff (aged 43) severe injuries including traumatic brain injury that required emergency surgery. Plaintiff filed suit in this Court on February 26, 2014, on the basis of diversity jurisdiction, alleging that Defendant's employee was acting in the scope of his employment at the time of the accident, and asserting state-law negligence claims against Defendant as the employer.

It is undisputed for purposes of the motions before the Court that following his discharge from the initial hospitalization on December 16, 2013, Plaintiff's treating physicians referred Plaintiff to psychological, neuropsychological, and psychiatric treatment and rehabilitation on multiple occasions. But other than seeing a psychiatrist

once, Plaintiff did not obtain any of these recommended treatments. The record indicates that on August 9, 2014, Dr. David Schreiber, Plaintiff's treating neurologist, conducted a neurological examination of Plaintiff and issued an expert report on November 14, 2014, concluding that due primarily to the brain injury, Plaintiff was totally and permanently disabled.

On December 2, 2014, a preliminary Life Care Plan ("LCP") was prepared concerning Plaintiff at his attorney's request. The LCP noted that Plaintiff reported continuing pain and problems with depression, anxiety over leaving his apartment, anger/aggression, impaired cognitive functioning, and mood changes, all problems he did not have before the accident. Based largely on Dr. Schreiber's observations, the LPC called for psychological counseling, the services of a case manager to help Plaintiff access needed services, daily care provided by personnel trained to support individuals with brain injury, part time attendance at a day program which might "involve the engagement of [Plaintiff] in some type of supported employment in the future," and intensive cognitive therapy. (Doc. No. 39-2.)

One of Defendant's experts on the issue of Plaintiff's future employability is Timothy Lalk, a vocational rehabilitation specialist, who prepared a Preliminary Vocational Rehabilitation Report dated April 1, 2015. The report is based on a review of Plaintiff's medical records, a review of Plaintiff's answers to interrogatories and October 8, 2014 deposition, and Plaintiff's LCP. Lalk summarized Plaintiff's medical, psychological, and vocational history from the date of the accident, including that Plaintiff's treating physicians had recommended that Plaintiff receive further treatment by a psychiatrist and neuropsychologist, and participate in a rehabilitation program, but that

Plaintiff had not obtained that treatment. Lalk opined that Plaintiff needed a neuropsychological evaluation and further rehabilitation and therapy before a professional vocational rehabilitation opinion could be provided. Specifically, he stated that "[t]he failure to fully evaluate him would make any vocational rehabilitation evaluation more a matter of guesswork than any type of professional opinion. " (Doc. No. 33-1, at 6.) Lalk stated that a rehabilitation program was needed to help an individual with traumatic brain injury recover to the fullest extent possible. Following "appropriate evaluation and treatments," Plaintiff could be referred to a vocational rehabilitation program available through the State of Missouri. Lalk stated "[t]here are programs available which work quite successfully with individuals who have suffered traumatic brain injuries." *Id*. In his deposition of May 19, 2015, Lalk again opined that it was too early to form a professional vocational opinion about Plaintiff's future employability. He acknowledged that he was not able to give an opinion on how effective any therapy Plaintiff might undergo would be. (Doc. No. 33-2.)

The other expert retained by Defendant, who is the subject of the second motion to exclude, is Sharron Hughes, a nurse case manager who was retained to evaluate and provide opinions on Plaintiff's LCP. Similar to Lalk, in her report dated April 10, 2015, Hughes stated that she did not think it was "possible, from a life care planning perspective, to predict [Plaintiff's] required future medical care until he has a neuropsychological evaluation, has initial treatment by a psychiatrist and completes an outpatient neurological rehabilitation program." (Doc. No. 35-1 at 1.) She agreed with the LCP that Plaintiff was in need of a neurological rehabilitation program, and added that upon completion of this program, "one could better delineate [Plaintiff's] future needs including any subsequent

therapies." (Doc. No. 35-1 at 2.)  In her deposition on June 8, 2015, Hughes explained it is "very difficult to project from a life care planning standpoint . . . what [Plaintiff] would need in the future because he never had the neuropsych evaluation, he'd never gone through the rehab program to determine what deficits . . . he could have been taught to cope with and to deal with, and which would have resolved with the rehab program to the point that he wouldn't have necessarily needed everything." (Doc. No. 39-3 at 6, Depo. 23.)  Hughes admitted that she was not qualified to say how Plaintiff might respond to the therapies she mentioned. (Doc. No. 39-3, Depo. p. 68.)

Plaintiff moves to exclude the testimony and opinions of Lalk under Federal Rule of Evidence 702, arguing that Lalk has not himself provided a vocational opinion, and that Lalk's opinion that no one can properly evaluate Plaintiff's potential for vocational rehabilitation until Plaintiff has further therapy is not relevant to the question of Plaintiff's future employability, and is improper as it comments on the credibility of other experts who may testify on this matter, which is something for the Court to determine.

Plaintiff also moves, pursuant to Rule 702, to exclude Hughes' opinion that it is not possible to predict Plaintiff's future life care needs until Plaintiff has had the evaluation and treatments, raising nearly identical arguments as those raised with respect to Lalk. Plaintiff also asserts that it is improper to allow Hughes to testify where she thinks she has enough information, and also allow her to testify where she does not think she has enough information. (Doc. No. 35 at 4.)

Defendant responds that it is not offering Lalk to present the jury with job options for Plaintiff, but rather to tell the jury "that no one can offer a valid opinion on employability" until Plaintiff undergoes further evaluation and rehabilitation, and why Dr.

Schreiber's opinion on employability is unfounded. (Doc. No. 40 at 9.) With respect to Hughes, Defendant asserts that it is permissible to offer a life care expert to critique Plaintiff's LCP, even though the expert offers no LCP of her own. As with Lalk, Defendant asserts that it is proper, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), for Hughes to state her opinion that it is not possible to predict required future medical care, medication, and rehabilitation needs until Plaintiff has a neuropsychological evaluation, treatment by a psychiatrist and completes a neurological rehabilitation program. Further, Defendant notes that Hughes offers several other opinions, some of which agree with the LCP and some of which disagree with the LCP, and Plaintiff offers no basis to exclude those opinions.

By reply, Plaintiff argues that Lalk's and Hughes's opinions assume that Plaintiff is not at maximum medical improvement ("MMI"), but that this premise is purely speculative, and further, Lalk and Hughes are not qualified to opine on this medical matter, especially as they never interviewed or examined Plaintiff and admitted that they could not say whether Plaintiff might improve from rehabilitation and treatment.

## **DISCUSSION**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule incorporates the Supreme Court's decision in *Daubert*, which charged trial judges with a "gatekeeping" role to exclude unhelpful and unreliable expert testimony. "The trial court has to decide whether [a] particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Am. Auto. Ins. Co. v. Omega Flex, Inc*., 783 F.3d 720, 723 (8th Cir. 2015).

Here, the Court finds no basis to exclude the opinions of Lalk. Plaintiff does not question the qualifications of Lalk to testify as a vocational rehabilitation expert nor his knowledge of the information that an expert in the field would need to offer a valid and reliable opinion as to future employability. Based upon his review of the records, Lalk notes that Plaintiff's treating physicians recommended that he receive further neuropsychological evaluation and treatment and further rehabilitation, but that Plaintiff did not obtain that treatment. Lalk is qualified to provide his opinion that he cannot provide a reliable opinion as to Plaintiff's future employability because Plaintiff has failed to obtain this treatment. Thus, one cannot know whether the treatment would have had an impact on Plaintiff's employment prospects. Essentially, Lalk is offering the opinion that it is premature, without this information, to know, reliability, what Plaintiff's future employment prospects might be. Plaintiff has offered nothing to suggest that Lalk does not possess the qualifications to offer an opinion that, in his field, information essential to formulating an opinion on future employability is lacking.

Plaintiff's further suggestion that any such opinion is irrelevant is unfounded. Plaintiff proposes to offer expert testimony from a neurologist that Plaintiff will no longer

be able to work. Lalk's opinions are directly relevant to rebut this expert opinion. The Court does not agree that this is an improper attack on the credibility of the expert; it is simply a proper challenge to the basis and reliability of the opinion offered by Plaintiff's expert. *See Deutsch v. Novartis Pharms. Corp.,* 768 F. Supp. 2d 480, 481 (E.D.N.Y. 2011). The Court also finds this information will be helpful to the jury. Lalk's further generalized opinions, that after rehabilitation Plaintiff could possibly be referred to a vocational rehabilitation program available through the State of Missouri, and that "there are programs available which work quite successfully with individuals who have suffered traumatic brain injuries" are also relevant and within Lalk's field of expertise.

Similarly, the Court concludes that Hughes is qualified to evaluate individuals' future medical and life care medical needs, and is able to opine what information is necessary to formulate such an evaluation. For the same reasons stated above with respect to Lalk, the Court finds no basis to exclude Hughes's opinion that it is not "possible, from a life care planning perspective, to predict [Plaintiff's] required future medical care until he has a neuropsychological evaluation, has initial treatment by a psychiatrist and completes an outpatient neurological rehabilitation program." As she explained in her deposition, Hughes is essentially stating that in her opinion there is not a basis for many of the opinions stated in the LCP. (Doc. No. 39-3, Depo. p. 51.) This testimony is proper under *Daubert*, and will be helpful to the jury in evaluating Plaintiff's LCP.

Additionally, as Defendant notes, Hughes offers other opinions in her report, essentially stating that she does not agree that certain services are necessary to the degree stated in Plaintiff's LPC. Plaintiff does not challenge Hughes's qualifications or methodology with respect to these opinions. The mere fact that she does not believe that

sufficient information exists to provide an opinion as to other aspects of the LCP does not provide a basis to exclude these opinions. Objections of this sort may be addressed through cross-examination.

Lalk and Hughes will not be permitted to opine as to the degree to which Plaintiff could benefit from participating in the treatment and rehabilitation programs, as both experts admitted that they are not qualified to do so. *See Am. Auto. Ins. v. Omega Flex*, 783 F.3d at 724-25 (affirming exclusion of opinion regarding improper product design, where expert denied expertise in design and installation). Defendant does not purport to offer such opinions from these experts in any event.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motions to exclude the opinions and testimony of Defendant's experts Timothy Lalk and Sharron Hughes are **DENIED**. (Doc. Nos. 32 & 34.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of August, 2015.